UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAY FOSTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN BROMLEY, JOHN H. DIETRICH, and SUNOPTA, INC.,<br><br>Defendants. | No. 08-cv-1313<br><br>CLASS ACTION COMPLAINT FOR VIOLATION SOF FEDERAL SECURITIES LAWS<br><br>**JURY TRIAL DEMANDED**<br><br>"ECF CASE" |

Plaintiff, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by SunOpta Inc. ("SunOpta" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by SunOpta; and (c) review of other publicly available information concerning SunOpta.

1. This is a securities class action against SunOpta and certain of its executive officers and directors on behalf of plaintiff and a class of all persons who purchased or otherwise acquired the common stock of SunOpta between August 8, 2007 and January 25, 2008, inclusive (the "Class Period"), alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"). As alleged herein, defendants published a series of materially false and misleading statements that defendants knew or recklessly disregarded were materially false and misleading at the time of such publication and that failed to disclose material information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading.

2.      On January 24, 2008, following the close of trading, defendants shocked investors after they published a press release that revealed, for the first time, that the Company was performing well below expectations and that defendants expected to cause the Company to take a material restatement charge in the near term -- rending its prior reported financial statements and reports unreliable, false and materially misleading. SunOpta, which processes and produces organic foods, said it expected to post a profit of 12 cents to 14 cents per share for the year, citing issues within its fruit and BioProcess groups that led to pretax write-downs and provisions of $12 million to $14 million. Among problems the Company cited were inventories within the Company's Fruit Group's berry operations requiring write-down to net realizable value, whereby "preliminary estimates indicated that an adjustment in the range of $9 to $11 million for this issue and related items is necessary." Further, the Company disclosed a charge of "approximately $3 million pre-tax, related to difficulties in collecting for services and equipment provided to a customer under the terms of an existing equipment supply contract within the SunOpta BioProcess Group."

3.      After SunOpta drastically lowered its fiscal 2007 profit forecast and announced that financial restatements are likely, shares of SunOpta plunged to a low on January 25, 2008 of $6.05.

4.      During the Class Period defendants knew or should have known that the Company had problems with its internal controls and inventory. While these internal control and inventory problems were ongoing, Defendant permitted the sale 5,080,532 common shares of the Company at an inflated purchase price of $13.20 per share.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§78j and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b- 5, promulgated thereunder by the SEC, 17 C.F.R. § 240.10b.5.

6. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §§1331.

7. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b) and (c).

8. Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.

9. In connection with the acts, transactions and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

10. Plaintiff Ray Foster purchased SunOpta common stock during the Class Period and suffered damages as a result of the federal securities law violations and false and misleading statements and material omissions alleged herein. Plaintiff's certification is attached to this complaint.

11. Defendant SunOpta is a corporation registered under the laws of the Country of Canada. The Company's United States headquarters is located at 5850 Opus Parkway, Suite 150, Minnetonka, Minnesota 55343 and its Canadian headquarters is located at 2838 Bovaird Drive

West Brampton, Ontario L7A 0H2, Canada. SunOpta's common stock is traded in an efficient market on the Nasdaq Stock Exchange (the "NASDAQ") and the Toronto Stock Exchange ("TSX") in a well-developed and efficient market. SunOpta, together with its wholly-owned subsidiaries, is a company that focuses on sourcing, processing, packaging, and distributing natural, organic, and specialty foods.

12.     Defendant Steven Bromley serves as President and CEO and a director of the Company. Bromley joined SunOpta in June 2001. He served as the Executive Vice President and Chief Financial Officer through September 2003 until his appointment as Chief Operating Officer. Bromley was appointed to the board of directors as President in January 2005 and subsequently as director and CEO in February 2007. Bromley is a director of most of the Company's subsidiaries and in July 2004, he was elected as director of the board of Opta Minerals Inc., which is approximately 70% owned by the Company.

13.     Defendant John H. Dietrich is a Chartered Accountant and Chartered Financial Analyst. The board of directors appointed Dietrich Vice President and Chief Financial Officer in September 2003. Prior to that Mr. Dietrich was appointed Vice President Finance, Corporate Controller Treasurer of the Company.

14.     The defendants named in ¶¶ 12 -13 above are Individual Defendants and SunOpta are collectively referred to herein as the "Individual Defendants."

15.     The Individual Defendants served as principal officers and/or directors of the Company during the Class Period, and as such, exercised control of SunOpta's general operations through their day-to-day involvement in the Company's business. Each of the Individual Defendants made false and misleading statements and/or failed to disclose material adverse

West Brampton, Ontario L7A 0H2, Canada. SunOpta's common stock is traded in an efficient market on the Nasdaq Stock Exchange (the "NASDAQ") and the Toronto Stock Exchange ("TSX") in a well-developed and efficient market. SunOpta, together with its wholly-owned subsidiaries, is a company that focuses on sourcing, processing, packaging, and distributing natural, organic, and specialty foods.

12.     Defendant Steven Bromley serves as President and CEO and a director of the Company. Bromley joined SunOpta in June 2001. He served as the Executive Vice President and Chief Financial Officer through September 2003 until his appointment as Chief Operating Officer. Bromley was appointed to the board of directors as President in January 2005 and subsequently as director and CEO in February 2007. Bromley is a director of most of the Company's subsidiaries and in July 2004, he was elected as director of the board of Opta Minerals Inc., which is approximately 70% owned by the Company.

13.     Defendant John H. Dietrich is a Chartered Accountant and Chartered Financial Analyst. The board of directors appointed Dietrich Vice President and Chief Financial Officer in September 2003. Prior to that Mr. Dietrich was appointed Vice President Finance, Corporate Controller Treasurer of the Company.

14.     The defendants named in ¶¶ 12 -13 above are Individual Defendants and SunOpta are collectively referred to herein as the "Individual Defendants."

15.     The Individual Defendants served as principal officers and/or directors of the Company during the Class Period, and as such, exercised control of SunOpta's general operations through their day-to-day involvement in the Company's business. Each of the Individual Defendants made false and misleading statements and/or failed to disclose material adverse

information concerning the Company's business and operations during the Class Period, as detailed herein. The Individual Defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware of or recklessly disregarded that the false and misleading statements complained of herein were being issued to the investing public, and approved of or ratified those statements in violation of federal securities laws.

16. Each of the Individual Defendants, by virtue of their high level position with the Company, was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition.

17. As officers and/or directors and controlling persons of a publicly held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, traded on the NASDAQ, and governed by the provisions of the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's common stock would be based upon truthful and accurate information. Defendants' material misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18. Each of the Defendants is liable as a participant in a wrongful course of conduct that operated as a fraud or deceit on those who purchased or otherwise acquired SunOpta common stock during the Class Period by disseminating materially false and misleading statements and/or

concealing material adverse facts. As a result, the investing public was deceived regarding SunOpta's business, operations and financial results and Plaintiff and other members of the Class purchased SunOpta common stock at artificially inflated prices and were damaged thereby.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased or otherwise acquired SunOpta securities from August 8, 2007 through January 25, 2008, inclusive (the "Class Period"). Excluded from the Class are Defendants, officers and directors of the Company, members of the immediate families of the Individual Defendants and each of their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or has had a controlling interest.

20. This action is properly maintainable as a class action because:

(a) the members of the proposed Class are dispersed throughout the United States and are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that Class members number in the thousands. Millions of SunOpta shares were traded publicly during the Class Period on the NASDAQ and, as of February 16, 2007, SunOpta had 62,879,353 shares of common stock outstanding.

(b) Plaintiff's claims are typical of those of all members of the Class because all have been similarly affected by Defendants' actionable conduct in violation of the federal securities laws as alleged herein;

(c) Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests

antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent;

(d) A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein because joinder of all members is impracticable. Furthermore, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it virtually impossible for Class members to redress the wrongs done to them. The likelihood of individual Class members prosecuting separate claims is remote;

(e) Plaintiff anticipates no unusual difficulties in the management of this action as a class action; and

(f) the questions of law and fact common to the members of the Class predominate over any questions affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(i) whether Defendants' acts and/or omissions as alleged herein violated the federal securities laws;

(ii) whether the Company's public statements and filings made during the Class Period misrepresented and/or omitted material facts concerning SunOpta's business operations and financial results;

(iii) whether Defendants acted with knowledge or with reckless disregard for the truth in misrepresenting and/or omitting material facts;

(iv) whether Defendants participated in and pursued the common course of conduct complained of herein;

(v) whether the market price of SunOpta securities was inflated

artificially as a result of Defendants' material misrepresentations and/or omissions during the Class Period; and

    (vi)  to what extent the members of the Class have sustained damages and the proper measure of damages.

## SUBSTANTIVE ALLEGATIONS

  21.  On February 22, 2007, SunOpta issued a press release announcing its financial results for the fourth quarter ended December 31, 2006. In the press release the Company stated: "SunOpta has confirmed revenue guidance for 2007 of $740 to $760 million and earnings guidance of $0.35 to $0.40 per diluted common share reflecting continued growth, further leverage in selling, general and administration costs and improved margins resulting from product mix, cost reductions including automation projects and a focus on higher plant utilization." Exhibit 99.1 to SunOpta Inc. Form 8-K, filed February 27, 2007.

  22.  On May 8, 2007, SunOpta issued another press release announcing its financial results for the first quarter ended March 31, 2007. In the press release, Defendant Bromley stated, in relevant part, "These earnings are consistent with our expectations for the first quarter and we are pleased to reconfirm that our annual revenue guidance of $740 million to $760 million and net earnings guidance of $0.35 to $0.40 per share." Exhibit 99.1 to SunOpta Inc. Form 8-K, filed May 10, 2007.

  23.  On August 8, 2007, SunOpta issued another press release announcing its financial results for the second quarter ended June 30, 2007. In the press release, Defendant Bromley stated, in relevant part, "Based on these results, we are pleased to increase our annual revenue guidance to $775 to $800 million and confirm our net earnings guidance of $0.35 to $0.40 per share,

including the dilutive impact of the additional shares issued during the first quarter." Exhibit 99.1 to SunOpta Inc. Form 8-K, filed Aug. 10, 2007.

24. On November 6, 2007, SunOpta issued a press release announcing its financial results for the third quarter ended September 30, 2007. In the press release, Defendant Bromley stated "Based on our results to date, we are pleased to reconfirm that our revenue guidance of $775,000,000 to $800,000,000 for fiscal year 2007 as well as confirm our net earnings guidance in the range of $0.35 to $0.40 per share, albeit at the lower end of the range, after absorbing the previously mentioned investment spending in our fruit snack operations and SunOpta BioProcess Inc." Exhibit 99.1 to SunOpta Inc. Form 8-K, filed Nov. 8, 2007.

25. On December 3, 2007, SunOpta announced a public offering by Defendant Bronfman, SRB Belvedere Trust, and The Charles R. Bronfman Trust of all of their 5,080,532 common shares of the Company at a purchase price of $13.20 per share, resulting in net proceeds to the selling shareholders of $67,063,022.40. The sole underwriter for the offering was BMO Capital Markets Corp.

26. On December 20, 2007, SunOpta announced that Defendant Stephen Bronfman submitted his resignation. Bronfman's resignation was effective December 20, 2007.

27. On January 24, 2008, SunOpta issued a press release, which included the following:

> Earnings for the year are expected to be in the range of $0.12 to $0.14 per diluted common share and have been impacted by significant issues within the SunOpta Fruit and SunOpta BioProcess Groups which have led to significant write downs and provisions in the range of $12 to $14 million pre-tax. The Company is currently analyzing the impact of the adjustments related to the SunOpta Fruit Group berry operations, including the potential impact on previously issued fiscal 2007 financial statements which will likely result in the restatement of previous

quarters.

> The Company has determined that inventories within the SunOpta Fruit Group's berry operations require write-down to net realizable value and preliminary estimates indicate that an adjustment in the range of $9 to $11 million for this issue and related items is necessary. Upon becoming aware of this issue, the Company has initiated a number of immediate and specific actions including engagement of an independent third party by the Company's audit committee to assess internal controls and processes, and implementation of a series of specific pricing and cost related actions to address potential causes of this issue. The Company's testing and analysis is ongoing and there can be no assurance that further adjustments will not be required.
>
> Included in the updated earnings estimate for the year is a provision of approximately $3 million pre-tax, related to difficulties in collecting for services and equipment provided to a customer under the terms of an existing equipment supply contract within the SunOpta BioProcess Group.
>
> The Company also has knowledge that the customer's US affiliate is in violation of a Technical Development Agreement which delineates the intellectual property of each of the parties. As a result of failed discussions to resolve these issues, the Company has taken legal action to protect its intellectual property and recover costs, and thus feels it is necessary to reserve for uncollected amounts.

28.     On January 24, 2008, following the close of trading, defendants shocked investors after they published a release that revealed, for the first time, that the Company was performing well below expectations and that defendants expected to cause the Company to take a material restatement charge in the near term -- rending its prior reported financial statements and reports unreliable, false and materially misleading. SunOpta, which processes and produces organic foods, said it expected to post a profit of 12 cents to 14 cents per share for the year, citing issues within its fruit and BioProcess groups that led to pretax write-downs and provisions of $12 million to $14 million. Among problems the Company cited were inventories within the Company's Fruit Group's berry operations requiring write-down to net realizable value, whereby "preliminary estimates indicated that an adjustment in the range of $9 to $11 million for this issue

and related items is necessary." Further, the Company disclosed a charge of "approximately $3 million pre-tax, related to difficulties in collecting for services and equipment provided to a customer under the terms of an existing equipment supply contract within the SunOpta BioProcess Group."

29. After SunOpta drastically lowered its fiscal 2007 profit forecast and announced that financial restatements are likely, shares of SunOpta plunged to a low on January 25, 2008 of $6.05.

30. Defendants knew or should have known that the Company had problems with its internal controls and inventory. While these internal control and inventory problems were ongoing, Defendant permitted the sale 5,080,532 common shares of the Company at an inflated purchase price of $13.20 per share.

### Applicability Of Presumption Of Reliance
### (Fraud-On-The-Market Doctrine)

31. The market for SunOpta securities was open, well-developed and efficient at all relevant times. As a result of the materially false and misleading statements and failures to disclose, SunOpta securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired SunOpta securities relying upon the integrity of the market price of SunOpta securities and market information relating to SunOpta, and have been damaged thereby.

32. During the Class Period, the artificial inflation of SunOpta stock was caused by the material misrepresentations and omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class

Period, Defendants made or caused to be made a series of materially false or misleading statements about SunOpta's business, prospects and operations. These material misstatements and omissions created an unrealistically positive assessment of SunOpta and its business and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed negatively affected the value of SunOpta stock. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

33. At all relevant times, the market for SunOpta securities was an efficient market for the following reasons, among others:

(a) SunOpta stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, SunOpta filed periodic public reports with the SEC and the NASDAQ;

(c) SunOpta regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) SunOpta was followed by securities analysts employed by major brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly

available and entered the public marketplace.

34. As a result of the foregoing, the market for SunOpta securities promptly digested current information regarding SunOpta from all publicly available sources and reflected such information in SunOpta's stock price. Under these circumstances, all purchasers of SunOpta securities during the Class Period suffered similar injury through their purchase of SunOpta securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

33. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of SunOpta who knew that the statement was false when made.

## COUNT I

### Violations of Sections 10(b) of The Exchange Act and SEC Rule 10b-5 Promulgated Thereunder
### Against All Defendants

35.     Plaintiff repeats and realleges each of the proceeding paragraphs, as if set forth fully herein.

36.     During the Class Period, Defendants carried out a course of conduct which was intended to and, throughout the Class Period, did (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of SunOpta common stock; and (iii) cause Plaintiff and other members of the Class to purchase SunOpta common stock at artificially inflated prices. In furtherance of this unlawful course of conduct, Defendants took the actions set forth herein.

37.     In addition to the duties of full disclosure imposed on Defendants as a result of the making of affirmative statements and reports to the investing public, the Defendants had a duty to properly disseminate truthful information that would be material to investors, including accurate and truthful information with respect to the Company's operations, financial condition and earnings so that the market price of the Company's common stock would be based on truthful, complete and accurate information.

38.     Defendants directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about its business, operations and future prospects as specified herein.

39.     Defendants employed devices, schemes, and artifices to defraud while in

possession of material adverse non-public information and engaged in acts, practices and a course of conduct as alleged herein in an effort to assure investors of SunOpta's value and performance and continued substantial growth, which included the making of, or the participation in the making of, false or misleading statements of material facts and/or omitting to state material facts necessary to make the statements not misleading, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon purchasers of SunOpta common stock during the Class Period.

40. These material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SunOpta's operating condition and future business prospects from the investing public and supporting the artificially inflated price of the Company's common stock, in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

41. As a result of the dissemination of the materially false and misleading information and/or failure to disclose material facts, as set forth above, the market price of SunOpta common stock was artificially inflated during the Class Period. In ignorance of the fact that market price of SunOpta's publicly-traded common stock was artificially inflated and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements made by Defendants during the Class Period, Plaintiff and other members of the Class acquired SunOpta common stock at artificially high prices and were damaged thereby.

42. At the time of said misrepresentations and/or omissions, Plaintiff and other

members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the market place known of the true financial condition and business prospects of SunOpta, which were not disclosed by Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired SunOpta common stock, or, if they had acquired the common stock during the Class Period, would not have done so at the artificially inflated prices which they paid.

43.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

44.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with the purchase of SunOpta common stock during the Class Period.

## COUNT II

### Violations Of Section 20(a) Of The Exchange Act
### Against the Individual Defendants

45.     Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein. This claim is brought against the Individual Defendants.

46.     As described in detail herein, because of their senior executive positions at SunOpta, their access to internal Company reports and information; and because they had control over the materially misleading information complained of herein which was being disseminated to the investing public via documents filed by the Company with the SEC and in public statements issued by the Company and/or provided to research analysts, the Individual Defendants were control persons within the meaning of the Exchange Act.

47. As set forth above, Defendants violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this complaint. By virtue of their positions as control persons, the Individual Defendants, each of whom violated Section 10(b) and Rule 10b-5, are liable pursuant to Section 20(a) of the Exchange Act.

48. As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all other Class members, pray for judgment as follows:

    A.    A determination that this action is a proper class action and certification of the Class under Rule 23 of the Federal Rules of Civil Procedure;

    B.    An award of compensatory damages in favor of Plaintiff and the other Class members against all Defendants for damages sustained as a result of Defendants' wrongdoing, including interest thereon;

    C.    An award to Plaintiff and the Class of their reasonable costs and expenses incurred in this action, including counsel fees, expert fees and other disbursements; and

    D. A grant of such other relief as is just and proper.

Dated: February 7, 2008              **MURRAY FRANK & SAILER, LLP**

By: _____S/_____
    Jacqueline Sailer (JS 9020)
    Gregory B. Linkh (GL 0477)
275 Madison Avenue
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff*

## GLANCY BINKOW & GOLDBERG LLP
## SWORN CERTIFICATION OF PLAINTIFF RAY FOSTER
## SUNOPTA, INC. SECURITIES LITIGATION

I, Ray Foster, certify that:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase SUNOPTA, INC., the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in SUNOPTA, INC. during the Class Period set forth in the Complaint are as follows:

SEE ATTACHED "EXHIBIT A"

5. I have not served as a representative party on behalf of a class under this title during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

☐ Check here if you are a current employee or former employee of the defendant Company.

I declare under penalty of perjury that the foregoing are true and correct statements

Dated: Feb 6/08

_____
(Please Sign Your Name Above)
RAY FOSTER

## EXHIBIT A

### Transactions of Ray Foster in SunOpta, Inc.

| DATE | TRANSACTION TYPE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 11/05/2007 | PURCHASE | 1000 | $11.88 |
| 11/06/2007 | PURCHASE | 1000 | $12.62 |
| 01/07/2008 | PURCHASE | 1000 | $12.75 |